UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LAWRENCE J. COOK,

          Plaintiff,

   v.

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security for
Operations,

          Defendant.

CASE NO. 3:17-CV-05660-JRC

ORDER ON PLAINTIFF'S
COMPLAINT

     This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

Local Magistrate Judge Rule MJR 13 (*see also* Consent to Proceed before a United States

Magistrate Judge, Dkt. 5). This matter has been fully briefed. *See* Dkt. 10, 11, 12.

     After considering and reviewing the record, the Court concludes that the ALJ did

not commit harmful legal error during the evaluation of plaintiff's Social Security claim.

Ultimately, there is substantial evidence to support the ALJ's conclusion that plaintiff

1    does not have any disabling physical or mental impairments as a result of his diabetes,

2    history of strokes, hypertension and wrist fracture. Although plaintiff contends that the

3    ALJ erred when evaluating plaintiff's allegations and testimony, the ALJ provided

4    specific and legitimate reasons supported by substantial evidence when concluding that

5    there are many inconsistencies and conflicts between plaintiff's testimony at his hearing

6    about his limitations and work history, and the statements and reports throughout the

7    medical record regarding his abilities. Similarly, the ALJ reasonably gave the lay witness

8    testimony little weight as it was inconsistent with the objective medical evidence.

9        Although plaintiff argues that the ALJ erred when evaluating the medical

10   evidence, the ALJ reasonably gave weight to the medical opinions of Drs. van Dam,

11   Leinenbach and Meharg which were well-supported and consistent with the record. The

12   ALJ properly rejected the opinions of Dr. Cooke and Ms. Markham because these

13   opinions lacked any clinical findings to support the opined limitations.  Moreover,

14   because the ALJ properly found that plaintiff could perform his past relevant work as an

15   executive director of a nonprofit agency as generally performed and the vocational expert

16   identified another type of substantial, gainful work existing in the national economy that

17   plaintiff could perform, the ALJ did not err in the step four finding.

18       Accordingly, the Court orders that this matter be affirmed pursuant to sentence

19   four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff, LAWRENCE J. COOK, was born in 1951 and was 62 years old on the alleged date of disability onset of February 20, 2014. *See* AR. 151-54. Plaintiff completed a fifth year in education training. Plaintiff has worked as a drug and alcohol counselor, account manager/trainer, and executive director of a nonprofit agency. AR. 186-90.

According to the ALJ, plaintiff has at least the severe impairments of "diabetes mellitus, history of strokes, hypertension, and history of wrist fracture (20 CFR 404.1520(c))." AR. 23.

At the time of the hearing, plaintiff was living in his home with a roommate. AR. 50, 54, 55.

## PROCEDURAL HISTORY

Plaintiff's application for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act was denied initially and following reconsideration. *See* AR. 68-78, 80-91. Plaintiff's requested hearing was held before Administrative Law Judge Gary Elliott ("the ALJ") on February 3, 2016. *See* AR. 41-66. On February 17, 2016, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act. *See* AR. 18-40.

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether the ALJ properly evaluated the medical evidence; (2) Whether the ALJ properly evaluated plaintiff's testimony; (3) Whether the ALJ properly evaluated the lay evidence; (4) Whether the ALJ properly assessed plaintiff's residual functional capacity ("RFC") and erred by basing his step four finding on his erroneous RFC assessment; (5) Whether the

ALJ failed to comply with Social Security Ruling ("SSR") 82-62; and (6) Whether this Court should exercise its discretion and remand plaintiff's claim for the award of benefits. *See* Dkt. 10 at 1.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

(1)     Whether the ALJ properly evaluated the medical evidence.

Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence of Thomas R. Cooke, D.O, Carla van Dam, Ph.D., Derek H. Leinenbach, M.D., Stephen S. Meharg, Ph.D., ABN, and Anita J. Markham, ARNP. Dkt. 10.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by

"setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). In doing so, the ALJ "has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)).

A. <u>Thomas R. Cooke, D.O.</u>

On September 3, 2013, plaintiff's treating physician, Dr. Cooke, noted that plaintiff "would not be working at all if it was not for how long he had been there and accommodations they made to allow him to continue." AR. 249. Dr. Cooke opined that:

> It is not likely that he is going to get any better. It has been over three years now since his stroke. It may even get worse. With his age as well as his marked weakness on LEFT side as well as cognitive difficulties, he is not going to be able to get a job any place else and could not work even full-time at a job that they made accommodations for him as far as when he came in and when he did not. So this would not be the case with any other job situation. So I think Social Security Disability is reasonable.

AR. 249.

On July 15, 2014, Dr. Cooke observed that plaintiff was still having problems some cognitive function and still has problems with balance," and that he "[i]s certainly not able to work on a full-time basis and at his age of 63 y/o, no one is likely to hire him with the deficit he has." AR. 237.

The ALJ assigned little weight to Dr. Cooke's opinions regarding plaintiff's cognitive functioning and that plaintiff is disabled. AR. 26. The ALJ reasoned that Dr.

Cooke did not record any mental status examination findings consistent with his opinions and his opinions are inconsistent with the objective evidence and opinion evidence from two separate psychological examinations. AR 26.

1.  *Lack of support*

First, the ALJ rejected Dr. Cooke's opinions because they were not supported by clinical findings. AR. 26, 33. Regarding plaintiff's mental limitations, the ALJ found that "Dr. Cooke did not record any remarkable mental status examination findings consistent with this opinion at the time he made the opinion or in his longitudinal treatment notes." AR. 26; *see also* AR. 33. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Here, although Dr. Cooke opined that plaintiff had cognitive difficulties, his treatment notes fail to show any mental status examinations or any other objective evidence to support his findings. AR. 237, 239, 247, 249-52. Plaintiff alleges that the ALJ failed to state a convincing or legitimate reason for rejecting Dr. Cooke's opinions, but fails to offer any evidence to the contrary. Dkt. 10 at 3. Therefore, the ALJ has provided a valid reason for rejecting Dr. Cooke's opinions, which is supported by substantial evidence in the record.

2.  *Inconsistent with the longitudinal record*

Next, the ALJ found that Dr. Cooke's opinions were inconsistent with the longitudinal examination findings. AR. 26 (citing AR. 225-230, 266-275), 33 (citing AR. 234). An ALJ need not accept an opinion, which is inadequately supported "by the record

as a whole." *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

Here, the ALJ's finding is supported by substantial evidence. With respect to plaintiff's mental limitations, Drs. van Dam and Meharg noted only mild cognitive limitations. Dr. van Dam opined that plaintiff had "good competencies despite the three prior strokes[,]" and found that plaintiff would be capable of employment. AR. 229. Dr. Meharg found that plaintiff had largely normal scores on several cognitive functioning tests, a few areas of mild abnormality that could be associated with cerebrovascular disease, but that plaintiff's performances on these tests were "not necessarily so low as to be considered deficient or necessarily disabling." AR. 273. While Ms. Markham found that plaintiff had moderate social impairments, she failed to provide any objective findings in support of her opinion. *See* AR. 277. Accordingly, the ALJ's finding that Dr. Cooke's opinions regarding plaintiff's mental limitations were inconsistent with the longitudinal record is supported by substantial evidence the record.

With respect to plaintiff's physical limitations, the ALJ cited to evidence that Dr. Leinenbach found that plaintiff had intact grip and strength and in his bilateral extremities, however, plaintiff's strength was slightly asymmetric in the left arm and leg compared to the right. AR. 234. However, this is not inconsistent with Dr. Cooke's finding that plaintiff has loss of full range of motion, difficulty with balance, and difficulty using his right shoulder and arm, AR. 237, 239, 247, 249, because full strength does not necessarily indicate a full range of motion or full use of an extremity. Therefore,

the ALJ's finding with respect to Dr. Cooke's opinions and plaintiff's physical limitations is not supported by substantial evidence.

### 3. Harmless error

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made " 'without regard to errors' that do not affect the parties' 'substantial rights.' " *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)).

Here, the Court concludes that the ALJ provided two valid reasons to reject Dr. Cooke's opinions. Therefore, the ALJ's error finding that Dr. Cooke's opinions are inconsistent with the longitudinal record with respect to plaintiff's physical impairments is harmless. *See Molina*, 674 F.3d at 1115, 1117; *Batson*, 359 F.3d at 1197 (finding ALJ's error harmless because the ALJ provided other legally valid reasons for discrediting the plaintiff's testimony).

### B. Drs. van Dam and Meharg

On July 9, 2014, Dr. van Dam diagnosed plaintiff with mild cognitive disorder NOS secondary to strokes, and alcohol use/rule of abuse, and rated his GAF score at 55. AR. 229. Dr. van Dam opined that plaintiff "would be capable of employment, with

nothing known regarding whether he could manage an eight hour day." AR. 229. Dr. van Dam noted that plaintiff may benefit from a referral to the Division of Vocational Rehabilitation ("DVR") to further assist him with employment possibilities, and further testing by a neuropsychologist to clarify "what would be best for him." AR. 229.

On October 29, 2014, Dr. Meharg found that plaintiff's neuropsychological findings "represent a mixed set of largely normal scores but a few areas of mild abnormality that could certainly be associated with cerebrovascular disease." AR. 272-73. Dr. Meharg found that plaintiff's treatment for these "mild cognitive impairment[s]" is "largely symptomatic and involves helping Larry to improve his organization and doing some problem solving around specific aspects of daily functioning that seem most affected by his cognitive problems." AR. 273. Dr. Meharg opined that "[s]peed of information processing, sustained attention, and some struggles with memory are indeed evident. While his performances on these measures are not necessarily so low as to be considered deficient or necessarily disabling, it is not surprising that Larry would perceive these decrements and noticing that he is functioning differently than past levels of mental acuity." *Id.*

The ALJ found that plaintiff's mental impairments were not severe. AR. 23-27. In doing so, the ALJ relied on the opinions of Drs. van Dam and Meharg and gave these opinions significant weight. AR 25. Plaintiff argues that the ALJ failed to acknowledge that Drs. Meharg and van Dam's findings and opinion show that plaintiff's cognitive impairment are severe, as they more than minimally affects his ability to perform some basic work activities. Dkt. 10 at 3-4, 6-7. The Court notes that the ALJ assigned little

weight to Dr. van Dam's GAF score indicating moderate limitations, which plaintiff does not challenge. AR. 25; Dkt. 10.

The opinions of Drs. Meharg and van Dam represent relatively benign findings and show no more than mild impairment in cognition. AR. 227-29, 266-75. The ALJ considered these opinions and found that plaintiff had no limitations in activities of daily living and maintaining social functioning, and a mild limitation in maintaining concentration, persistence and pace, and plaintiff fails to identify which of these findings, if any, suggest that his impairments are severe. AR. 26-27; Dkt. 10 at 4, 7. Therefore, the Court concludes that the ALJ properly found that plaintiff did not have a severe mental impairment. *See* 20 C.F.R. § 404.1520a(d).

Moreover, even if the ALJ erred when he assessed plaintiff's RFC, plaintiff has not shown why such an error is not harmless. *See Molina*, 674 F.3d at 1111 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.' ")). Plaintiff has not cited to any evidence that the opinions of Drs. van Dam and Meharg describe any resulting functional limitations. *See* Dkt. 10. As a result, plaintiff fails to offer any explanation nor has he cited to any evidence in the record to establish his mild cognitive impairments would impair his ability to function under the limitations included the ALJ's RFC. It is plaintiff's duty to show his mild cognitive impairments had more than a minimal effect on his ability to perform work duties.  As such, any error in the ALJ's assessment of his RFC was harmless. *Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007); (*Collins v. Astrue,* 2009 WL 112863, at *5 (W.D. Wash. Jan. 14, 2009) (error harmless

"because there is no medical evidence in the record that plaintiff's headaches caused him any work-related limitations").

    C. <u>Derek H. Leinenbach, M.D.</u>

On July 10, 2014, Dr. Leinenbach diagnosed plaintiff with prior cerebrovascular accidents with gait instability, dysphagia, and decreased upper extremity coordination; Type 2 diabetes mellitus; and hypertension. AR. 234. Dr. Leinenbach opined that Cook (1) could stand and/or walk for two hours without interruption in an eight-hour workday (limited by gait instability and poor coordination in a setting of prior cerebrovascular accidents); (2) could stand and/or walk for a total of four hours in an eight-hour workday; (3) might benefit from a cane for balance; (4) could lift or carry 20 pounds occasionally and 10 pounds frequently (limited by gait instability in the setting of prior strokes); (5) could frequently reach, handle, finger, and feel; and (6) should not work at unprotected heights (due to gait instability). AR. 234-35.

The ALJ assigned some weight to Dr. Leinenbach's opinion. AR. 32. The ALJ found that this opinion was "generally" consistent with his examination of plaintiff, but that when viewing the evidence in the light most favorable to the plaintiff, the RFC contains further limitations than those described by Dr. Leinenbach. AR. 32. Plaintiff does not directly contest the weight assigned to this opinion, but rather, argues that the ALJ erred by failing to acknowledge that Dr. Leinenbach's findings are consistent with plaintiff's testimony about his physical limitations. Dkt. 10 at 5.

As an initial matter, the Court notes that the ALJ did not discount Dr. Leinenbach's opinion because it was consistent with plaintiff's testimony, and in fact,

made no reference to plaintiff's testimony in assessing Dr. Leinenbach's opinion. *See* AR. 32. Plaintiff cites to no evidence in the record to support his assertion. *See* Dkt. 10 at 4-5. And based on the Court's review of the record, plaintiff's assertion is unfounded. Dr. Leinenbach's opinion is not consistent with plaintiff's testimony, and shows greater functioning than described by plaintiff. For example, plaintiff testified that he could not regularly lift ten pounds throughout the day, AR. 51, however, Dr. Leinenbach only found "slight asymmetric relative decreased strength in the left arm and leg compared to the right." AR 233-34. As a result, Dr. Leinenbach opined that plaintiff could lift 20 pounds occasionally and ten pounds frequently. AR. 234. In addition, plaintiff testified that he had difficulty with fine motor skills and difficulty with this arms, AR 52-55, yet Dr. Leinenbach found that plaintiff only had "mild decreased coordination of movement in the right upper extremity," and that plaintiff's "[r]apid alternating movements are mildly slow with slight incoordination bilaterally." AR 233-24. He opined that plaintiff can reach, handle finger, and feel frequently. AR 234-35. Therefore, the Court concludes that the ALJ did not err in his assessment of Dr. Leinenbach's opinion.

D. Anita J. Markham, ARNP

On July 16, 2015, Ms. Markham opined that plaintiff had the following limitations: (1) standing at one time: 30 minutes; (2) sitting at one time: four hours; (3) hours patient can work per day: four hours; (4) lifting on occasional basis: ten pounds; (5) lifting on frequent basis: five pounds; (6) right hand manipulation: occasionally; (7) left hand manipulation: frequently; (8) raise left arm over shoulder level: occasionally; and (9) raise right arm over shoulder level: occasionally. AR. 277. Ms. Markham further

opined that Cook was moderately impaired in his ability to work with others; interact appropriately with the general public; accept supervision; and get along with coworkers. AR. 277.

On August 26, 2015, Ms. Markham found that plaintiff was "chronically ill-appearing," he had a neurological gait and residual neuro deficit from his strokes, and he had major depression disorder with recurrent (repeat) episodes of moderate depression. AR. 318-19.

The ALJ gave little weight to Ms. Markham's opinion because the longitudinal record did not show moderate social difficulties as described by Ms. Markham, Ms. Markham was not aware of plaintiff's stroke history, and her treatment records did not show objective findings consistent with the degree of limitations she described. AR. 26, 33. Plaintiff contends that the ALJ's finding is not supported by substantial evidence, the ALJ failed to acknowledge that Ms. Markham's findings and opinion confirm that plaintiff has severe mental impairments, and the ALJ failed to include in his RFC assessment all of the limitations described by Ms. Markham. Dkt. 10 at 8.

A nurse practitioner is considered an "other source" and is "not entitled to the same deference" as a physician or psychologist. *Molina*, 674 F.3d at 1111. Although an ALJ must consider opinions from "other sources"—that is, medical sources who are not "acceptable medical sources"—he may reject them with germane reasons, the same standard as applied to lay witnesses. *Id.*

Here, the ALJ's finding is supported by substantial evidence. As noted by the ALJ, AR. 26, 33, Ms. Markham's opinion is inconsistent with the opinions of Drs. van Dam

and Meharg, who found no more than mild cognitive limitations, AR. 225-230, 266-275. Ms. Markham's treatment notes also fail to show any objective findings consistent with the opined mental or physical limitations. AR. 276-78. While Ms. Markham noted the dates of plaintiff's previous strokes, her opinion also indicates that she was unaware of the type or additional details surrounding each incident. AR. 276. In his reply, plaintiff argues that Ms. Markham examined plaintiff nine months after Dr. Leinenbach, "so the differences in their findings and opinions can be explained by the passage of time. Dkt. 12 at 6. However, because Ms. Markham did not provide any clinical findings to support her opinion, it is not clear that any differences between her opinion and Dr. Leinenbach's opinion can be attributed to the "passage of time."

Accordingly, the ALJ provided germane reasons supported by substantial evidence to reject Ms. Markham's opinion.

(2)     Whether the ALJ properly evaluated plaintiff's testimony.

Plaintiff contends that the ALJ erred when failing to credit fully his allegations and testimony. Dkt. 12. Plaintiff testified that he is unable to work because he gets tired easily, gets weepy, strange things set him off, and has serious problems with fine motor control. AR 46. Plaintiff testified that he wasn't good at writing, his typing wasn't as good as it used to be, and that he sometimes made important decisions incorrectly. AR 46. Plaintiff testified that he has balance problems and that he did "a lot of falling[.]" AR. 50. Plaintiff testified that he uses a cane when he is outside the home. AR. 50. Plaintiff testified that he could not lift ten pounds regularly through an eight-hour period. AR. 51. Plaintiff testified that he has difficulty opening his pillbox and has difficulty transferring

the pills from his hand to his mouth. AR. 52. Plaintiff testified that he has more problems with his left hand. AR. 53.

Plaintiff testified that he can use a computer for three hours at a time, and that when he is on the computer, he is generally reading or using a mouse, but isn't doing a lot of typing. AR. 54. Plaintiff testified that he can stand for about three hours at a time, assuming he can move a little bit. AR. 55. Plaintiff testified that while standing he would need to be leaning against something such as a cane. AR. 56. Plaintiff testified that he could walk for 15 blocks, but at a slow pace. AR. 56. Plaintiff testified that he rests during the day, due to fatigue. AR. 56-57. Plaintiff testified that he normally takes a nap between 10:00 am and 11:30 am, rests for two-and-a-half hours in the afternoon, and if he can, he takes a "dip" in the hot tub. AR. 57.

Plaintiff testified that he forgets things, so he has to make lists. AR. 58. Plaintiff testified that his memory has gotten worse, and he has problems recalling the correct word he wants to use. AR. 59. Plaintiff testified that he has been advised by others that he is slurring his speech more than he used to. AR. 59. Regarding his judgment, plaintiff testified that he will think that he is right about something, without thinking it through, and then discover otherwise. AR. 59-60.

The ALJ rejected plaintiff's testimony reasoning that: (1) plaintiff's testimony was inconsistent with his daily activities; (2) plaintiff's testimony was inconsistent with reports to various medical professionals; (3) plaintiff's depression was effectively treated with medication; (4) plaintiff was laid off from his last job, not because he could no

longer perform his job duties; and (5) plaintiff's testimony was inconsistent with the objective medical evidence. AR. 35.

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*)). In evaluating a claimant's allegations of limitations, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)); *Reddick,* 157 F.3d at 722 (citations omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citation omitted).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281-82 (citing *Cotton v. Bowen*, 799 F.2d 1407-08 (9th Cir. 1986)). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen,* 80 F.3d at 1281-82. If an ALJ rejects the testimony of a claimant once an underlying impairment has been established, the ALJ must support the rejection "by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1284 (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)); *see also Reddick,* 157 F.3d at 722 (citing *Bunnell*, 947 F.2d at 343, 346-47).

The Court concludes that one of the reasons that the ALJ provided for discounting plaintiff's subjective symptom testimony was not proper – that plaintiff's testimony was inconsistent with his daily activities. Nevertheless, the fact that one of the reasons was not proper does not render the ALJ's credibility determination invalid, as long as the determination is supported by substantial evidence in the record overall, as it is in this case for the other proper reasons the ALJ gave. *Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th Cir. 2001).

A. Plaintiff's daily activities

The ALJ found that plaintiff's daily activities were inconsistent with his claim that he is unable to maintain full-time work. AR. 35. The Ninth Circuit has recognized two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether the activities contradict the claimant's other testimony and (2) whether the activities of daily living meet "the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The ALJ cited to plaintiff's ability to cook, follow recipes, shop as needed, drive, spend three hours at a time on his computer conducting job searches, and do volunteer work. AR. 35. However, plaintiff's testimony indicates his activities of daily living are more limited than noted by the ALJ. For example, plaintiff testified that he takes a nap from about 10:00am to 11:30am and another one for two-and-a-half to three hours in the afternoon. AR. 57. Plaintiff also testified that he has difficulty opening jars, reaching for things in his kitchen, opening his pill box, and carrying groceries. AR. 53-58.

Moreover, the Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping [and] driving a car, ... does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing *Fair*, 885 F.2d at 603); *see Reddick*, 157 F.3d at 722. In addition, many home activities are not easily transferable to a work environment, "where it might be impossible to periodically rest or take medication.'" *Trevizo v. Berryhill*, 871 F.3d at 871 F.3d 664, 682 (9th Cir. 2017).

The ALJ did not cite to specific evidence demonstrating spends a substantial part of his day performing any of these activities or the level at which he performed them is inconsistent with his other testimony. Therefore, the ALJ's finding that plaintiff's daily activities show that he is capable of performing sedentary work with limitations is not a clear and convincing reason to discount plaintiff's subjective symptom testimony. *See Reddick*, 157 F.3d at 722 (recognizing "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Nor would the record support findings that plaintiff's activities are transferable to a work setting and plaintiff spends a "substantial part of [his] day" on them, even if the ALJ had made such findings. *See Smolen*, 80 F.3d at 1284 & n.7.

Nevertheless, as discussed below, one improper reason for discounting plaintiff's testimony does not render the ALJ's decision in valid. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (striking down one or more justifications for discrediting a claimant's testimony amounted to a harmless error where the ALJ

presented other reasons for discrediting the testimony which was supported by substantial evidence in the record); *Carmickle*, 533 F.3d at 1163. Therefore, any such error with respect to his rationale is harmless.

B.  Inconsistent statements

The ALJ discounted plaintiff's subjective symptom testimony because plaintiff made inconsistent statements regarding his fatigue. AR. 35. An ALJ may consider prior inconsistent statements concerning symptoms and "other testimony by [plaintiff] that appears less than candid in weighing plaintiff's credibility." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

Here, plaintiff testified that he is unable to work because he gets tired very easily. AR. 47. However, during visits with Ms. Markham, plaintiff repeatedly denied fatigue. AR. 309, 313, 316, 317, 322. Plaintiff also denied any fatigue to Dr. Leinenbach. AR. 231. Plaintiff argues that it is unclear whether or not Ms. Markham directly asked if he was taking naps, and that his impairments can be reasonably expected to cause plaintiff to be tired and need naps. Dkt. 10 at 10. Yet this does not show that the ALJ's finding is not supported by substantial evidence. Here, the ALJ made the permissible inference that plaintiff's failure to report fatigue to his medical providers was inconsistent with his testimony that he tires easily and needs to nap twice a day. AR. 47, 57. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (internal citation omitted) (The ALJ may "draw inferences logically flowing from the evidence."). Therefore, the Court finds that the ALJ did not err in discounting plaintiff's testimony based on his inconsistent statements.

C.  Plaintiff's depression

The ALJ found that plaintiff's depression is treated with medication. AR. 35.

"Impairments that can be controlled effectively with medication are not disabling for the

purpose of determining eligibility for [disability] benefits." *Warre v. Comm'r of the SSA*,

439 F.3d 1001, 1006 (9th Cir. 2006); *see also Odle v. Heckler*, 707 F.2d 439, 440 (9th

Cir. 1983) (noting an ALJ may consider whether treatment produced a fair response or

control of pain which was satisfactory).

Plaintiff alleged that he is unable to work due in part to his depression. AR. 47

(plaintiff testified he is "emotionality is a little – I get weepy."), 167 (function report).

However, treatment notes reflect that plaintiff told his medical providers that his

depression was controlled with medication, and indicated he "did not believe he was

depressed anymore[.]" AR 227. Accordingly, the Court finds that the ALJ's finding that

plaintiff's depression is controlled with medication is a clear and convincing reason

supported by substantial evidence to reject plaintiff's testimony.

D.  Plaintiff's work history

The ALJ found that plaintiff left his last job because he was laid off, not because

he could no longer perform his job duties. AR. 35. This is a valid reason for discounting

his testimony. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). The ALJ's

finding is also supported by the record. Plaintiff reported to Dr. Meharg that "[h]e last

worked as administrator in a legal aid office. He recalls being terminated from his

position without any particular rational [sic] but believes it was mostly due to budgetary

cutbacks." AR. 267. This also corroborated by lay witness from Sam McReynolds,

plaintiff's friend, who reported that plaintiff was laid off and didn't believe it was because it was because of any issues with social functioning. AR. 183. Plaintiff contends that testimony from Carolyn Hipps, plaintiff's former co-worker, indicates that plaintiff's inability to perform his job even with accommodations was the primary reason his job ended. Dkt. 10 at 10 (citing AR. 193). However, while Ms. Hipps' letter outlines plaintiff's work history and the impact of his strokes on his schedule, she does not indicate why plaintiff stopped working at Lewis County Bar Legal Aid. AR. 193. (stating that plaintiff "never completely recovered" from his last stroke in May 2012, was unable to write, had slurred speech, and was very weak in the legs, forgetful and agitated easily). Accordingly, the Court concludes that this is a clear and convincing reason, supported by substantial evidence to reject plaintiff's testimony.

E. Objective evidence

Lastly, the ALJ found that the objective medical evidence was inconsistent with plaintiff's subjective symptom testimony. AR. 35. Although an ALJ may not discredit a plaintiff's testimony as not supported by objective medical evidence once evidence demonstrating an impairment has been provided, *Bunnell*, 947 F.2d at 343, 346-47 (citing *Cotton,* 799 F.2d at 1407), an ALJ may discredit a plaintiff's testimony when it contradicts evidence in the medical record. *See Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir. 1995).

Specifically, the ALJ noted that plaintiff's psychological and cognitive testing showed only mild deficits. AR 35. The ALJ also found that plaintiff displayed some difficulties with weakness and range of motion, but that the most recent consultative

examination showed unremarkable findings related to his upper extremities and some difficulties with postural activities that are accommodated by the RFC. AR. 35.

Here, the record supports the ALJ's finding. Dr. Leinenbach found that plaintiff's gross and fine motor skills, range of motion, sensation, and strength were generally normal. AR. 232-34. While Dr. Cooke found that plaintiff had left-side weakness and cognitive difficulties, his treatment notes do not reflect any objective evidence supporting these findings such as strength testing or a mental status examination. *See* AR. 237, 239, 247, 249. Similarly, Ms. Markham opined that plaintiff could only lift ten pounds occasionally and five pounds frequently and could only work four hours per day, but her opinion is also not supported with any objective evidence. AR. 277. With respect to plaintiff's mental limitations, both Drs. Meharg and van Dam conducted a mental status examination and found that plaintiff had a mild cognitive impairment. AR. 228-29, 272-73. This objective evidence is inconsistent with plaintiff's testimony that he is unable to work because he has problems with balance, fine motor skills, using his left hand, memory, and judgment. AR. 46, 50, 51, 53, 58-59.

Accordingly, the Court concludes that the ALJ's finding that plaintiff's testimony is inconsistent with the objective medical evidence is a clear and convincing reason supported by substantial evidence.

F.  Harmless error

The Court concludes that the ALJ erred in finding that plaintiff's testimony was inconsistent with this daily activities, *see supra* subsection A. However, because the ALJ also provided four other valid reasons to reject plaintiff's subjective symptom testimony

– plaintiff's testimony was inconsistent with his statements regarding fatigue, the objective evidence, and his work history, and that plaintiff's depression was treated with medication – the ALJ's error is harmless. *See Molina*, 674 F.3d at 1115, 1117; *Batson*, 359 F.3d at 1197 (finding ALJ's error harmless because the ALJ provided other legally valid reasons for discrediting the plaintiff's testimony).

(3)     Whether the ALJ properly evaluated the lay evidence.

Plaintiff contends that the ALJ failed to give germane reasons for rejecting the lay witness testimony of his friend, Sam McReynolds, and his former co-worker, Carolyn Hipps. Dkt. 10.

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even if the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Lewis*, 236 F.3d at 512.

On June 6, 2014, Mr. McReynolds reported that plaintiff's strokes have impacted his ability to balance, write, walk, drive, budget money, and strength. AR. 177-78, 180-83. Mr. McReynolds testified that plaintiff can only walk five or six blocks before needing to rest for about a half an hour, doesn't handle stress well, spends more time alone, has a greater need for control, and occasionally uses a cane. *Id.*

On September 3, 2014, Ms. Hipps reported that plaintiff never fully recovered from his last stroke in May 2012. AR. 193. Ms. Hipps reported that plaintiff was unable to write legibly, his speech was slurred, and he was very weak in the legs. *Id.* Ms. Hipps reported that plaintiff became very forgetful at times and would tire easily. *Id.*

The ALJ found that the statements of Mr. McReynolds and Ms. Hipps did not indicate limitations beyond those accommodated for in the RFC. AR. 34. The ALJ also found that these statements were inconsistent with the objective evidence. AR. 34-35.

An ALJ may discredit lay testimony if it conflicts with medical evidence, even though it cannot be rejected as unsupported by the medical evidence. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (An ALJ may discount lay testimony that "conflicts with medical evidence"). Here, the ALJ referred to the lack of objective findings supporting any physical impairments and that plaintiff's psychological examinations did not show more than mild difficulties with mental functioning AR. 34 (citing AR. 225-230, 266-275). Therefore, the first reason given by the ALJ to discredit the testimony of Mr. McReynolds and Ms. Hipps is germane and supported by substantial evidence.

Defendant does not argue that the ALJ's finding that the statements of Mr. McReynolds and Ms. Hipps failed to indicate limitations beyond those accommodate for in the RFC. Dkt. 11. However, any such error with respect to this finding is harmless, because the ALJ provided one germane reason to reject the lay witness testimony. *See Molina*, 674 F.3d at 1115, 1117; *Batson*, 359 F.3d at 1197 (finding ALJ's error harmless because the ALJ provided other legally valid reasons for discrediting the plaintiff's testimony). Moreover, because the testimony of Mr. McReynolds and Ms. Hipps did not

include limitations beyond those described by plaintiff, the ALJ's analysis and reasoning

for rejecting plaintiff's testimony "apply with equal force to [the lay witness] testimony."

*Molina*, 674 F.3d at 1122. Therefore, any error in the ALJ's evaluation of the statements

of Mr. McReynolds and Ms. Hipps is harmless. *Id.* (finding harmless error where the ALJ

failed to discuss testimony from the family members when the testimony from the family

members did not describe limitations beyond those described by the claimant, whose

testimony the ALJ properly discredited).

      In sum, the ALJ provided a germane reason for rejecting the testimony of Mr.

McReynolds and Ms. Hipps and validly rejected the limitations described by the lay

witness testimony in discussing plaintiff's testimony. The Court therefore concludes that

the ALJ did not commit reversible error in his analysis of the lay evidence.

      (4)     Whether the ALJ properly assessed plaintiff's RFC and erred by basing his step four finding on his erroneous RFC assessment, and whether the ALJ failed to comply with SSR 82-62.

      Plaintiff argues that the ALJ's RFC assessment is legally erroneous and not

supported by substantial evidence, as it does not include all of the limitations described

by Dr. Cooke, Dr. van Dam, Dr. Meharg, and Ms. Markham, as well as the limitations

described by plaintiff and the lay witnesses. Dkt. 10 at 15. However, because the Court

finds that the ALJ properly considered the medical opinion evidence, plaintiff's

testimony, and the lay witness testimony, the Court concludes that ALJ did not err in the

RFC assessment.

      Plaintiff also argues that the ALJ failed to comply with SSR 82-62 because the

ALJ did not include any findings regarding the physical and mental demands of

plaintiff's past job. Dkt. 10 at 16. The ALJ found that plaintiff was able to perform his past relevant work as an executive director of a nonprofit agency. AR. 36.

At step four in the evaluation process, the ALJ must determine whether or not a claimant's impairment(s) prevents the claimant from doing past relevant work. *See* 20 C.F.R. § 404.1520(f). If the ALJ finds that the claimant has not shown an incapability of performing past relevant work, the claimant is not disabled for social security purposes and the evaluation process ends. *See id.* Plaintiff bears the burden to establish the inability to perform past work. *See Barnhart v. Thomas,* 540 U.S. 20, 25 (2003) (footnote omitted); *Pinto v. Massanari*, 249 F.3d 840, 844, 845 (9th Cir. 2001) (*citing* 20 C.F.R. §§ 404.1520(e), 416.920(d); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990)). Although the burden of proof lies with the claimant, the ALJ still has a duty to make requisite factual findings to support his conclusion as to whether plaintiff can perform his past relevant work. *See Pinto,* 249 F.3d at 844 (despite the fact that the claimant has the burden at step four, "the ALJ is [not] in any way relieved of his burden to make the appropriate findings to insure that the claimant really can perform his or her past relevant work"); *see also Henrie v. U.S. Dept. Of Health & Human Serv.,* 13 F.3d 359 (10th Cir. 1993) (recognizing the tension created between the mandate of SSR 82–62 and the claimant's burden of proof, and finding that the ALJ's duty is one of inquiry and factual development while the claimant continues to bear the ultimate burden of proving disability).

SSR 82–62 provides that a determination that a claimant has the capacity to perform a past relevant job must contain the following specific findings of fact: (1) a

finding of fact as to the claimant's RFC; (2) a finding of fact as to the physical and mental demands of the past job or occupation; and (3) a finding of fact that the claimant's RFC permits him to return to the past job or occupation. *See* SSR 82–62; *see also Pinto,* 249 F.3d at 844–45.

Here, the ALJ made sufficient findings as to plaintiff's RFC. *See* AR. 32. Defendant concedes that the ALJ failed to make specific findings about the physical and mental requirements for the job of executive director of a nonprofit agency as plaintiff actually performed it. Dkt. 11 at 14-15.

Despite this error in determining plaintiff could perform work as it was actually performed, any error committed by the ALJ was harmless because the ALJ still properly found that plaintiff's RFC would permit him to return to his past job or occupation. AR. 36, 61. *See also Curry,* 925 F.2d at 1131; SSR 82–62 ("A finding of fact that the individual's RFC would permit a return to [] her past job or occupation.").  The vocational expert ("VE") testified that an individual with the hypothetical functional ability as plaintiff's RFC indicates could perform the past relevant work as an executive director of a nonprofit agency. AR. 61. The VE also testified that her opinion on this matter was consistent with the Dictionary of Occupational Titles ("DOT"). AR. 62. The DOT has been characterized by the Ninth Circuit as "the best source for how a job is generally performed." *See Pinto*, 249 F.3d at 845-46 (citations omitted). The ALJ adopted the testimony of the VE. AR. 36. For these reasons, the Court concludes that the ALJ made sufficient factual findings regarding whether or not plaintiff, given his RFC,

could perform his past relevant work as an executive director of a nonprofit agency as that occupation is generally performed.

And even if the ALJ erred in finding that plaintiff's RFC somehow prevents him from performing his past relevant work as it is generally performed, a contention that the Court finds is not supported by the record, the ALJ's non-disability finding would still be affirmed. While the ALJ does not provide other types of substantial gainful work existing in the national economy in his decision, *see* AR. 36, the ALJ asked the VE at the hearing to identify other jobs that plaintiff can still perform, considering his RFC, age, education and work experience. AR. 62. The VE testified that plaintiff could perform the following work: call out operator, with 150 positions regionally and 9,000 nationally. AR. 62. The VE testified that the proposed position was consistent with the DOT. AR. 62. Thus, even if plaintiff argues that his RFC prevents him from performing his past relevant work as it is generally performed, the VE still identified substantial gainful work existing the national economy that plaintiff could perform.

Based on the foregoing, the Court finds that while the ALJ erred in determining that plaintiff could perform his past relevant work as it is actually performed, the ALJ still properly determined that plaintiff could perform his past relevant work as it is generally performed. Moreover, any error was harmless, as the VE identified another type of substantial, gainful work existing in the national economy to support the finding of non-disability. *Curry,* 925 F.2d at 1131.

<u>CONCLUSION</u>

Based on these reasons and the relevant record, the Court **ORDERS** that this

matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** should be for defendant and the case should be closed.

Dated this 11th day of September, 2018.


J. Richard Creatura
United States Magistrate Judge